***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission AFFIRMS the Opinion and Award of Deputy Commissioner Stanback with minor modifications.
 ***********
The Full Commission finds as fact and concludes as a matter of law the following, which were entered into by the parties before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Commission and subject to the terms of the Workers' Compensation Act, and the Commission has jurisdiction over the parties and subject matter.
2. The plaintiff, Darrell C. Morris, was an employee of the defendant, Barnes Transportation Services, Inc., and National Benefits America is the workers' compensation carrier of Barnes Transportation Services, Inc.
3. Documents stipulated into evidence include the following:
a. Stipulated Exhibit #1 — plaintiff's medical records and bills
b. Stipulated Exhibit #2 — Industrial Commission Form 22
 ***********
Based upon the most competent, credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner the plaintiff was 43 years old and had completed the twelfth grade. The plaintiff began working for Barnes Transportation Services, Inc. in October of 2002 as a truck driver and was so employed through his injury on April 20, 2003.
2. On or about April 20, 2003, the plaintiff sustained an injury by accident while in the regular course and scope of his employment with the defendant-employer, or a specific traumatic incident of the work assigned, when he was connecting his tractor and trailer by raising the landing gear, and he suddenly felt a pop in the back of his neck followed by immediate and severe pain.
3. After sustaining the injury by accident on April 20, 2003, the plaintiff rested for approximately an hour and a half due to the pain. The plaintiff did not immediately notify his employer regarding this incident, as he assumed the pain would go away. He also thought that if he called his employer to say that his back was hurting, that he would be told to get a drink of water and continue working. The plaintiff did call his wife to inform her that he was having back pain.
4. Between April 20, 2003, and early May, the plaintiff continued with his work duties but also experienced numbness and shooting pain in his upper and lower extremities. His wife encouraged him to see his family physician to assess the problem.
5. On May 15, 2003, the plaintiff presented to Louis M. Velazquez, PA-C and reported a two-week history of pain in the cervical and upper thoracic spine region with neuropathy down the left arm involving the thumb, index and middle finger of the hand. On examination, the plaintiff had decreased grip strength on the left and decreased flexion and extension of the arm. Mr. Velazquez ordered an MRI and referred the plaintiff to K. Stuart Lee, M.D., and a neurosurgeon in Greenville.
6. On June 13, 2003, the plaintiff reported his back problem as a work-related condition by notifying Calvin "Buck" Buchan, director of safety for the defendant-employer. The defendants denied the claim.
7. Dr. Lee had previously treated the plaintiff for a spinal cord tumor beginning on January 31, 2001. At that time, Dr. Lee diagnosed the plaintiff with a large tumor in the spinal canal at C1-C2 and eventually performed a laminectomy with excision and removal of the tumor at the C1-C2 level on February 16, 2001.
8. On March 6, 2001, the plaintiff presented to Dr. Lee for follow-up, and he was informed the tumor was malignant, and he underwent radiation therapy in addition to the laminectomy and excision. The plaintiff presented again in June of 2001 and since his radiation therapy and surgery were going well, he requested to return to work.
9. The plaintiff again presented to Dr. Lee in July of 2001 and January of 2002 for repeat MRI scans which revealed no evidence of recurrent tumor. The plaintiff continued to have some mild pain in his neck but returned to normal activities at both work and home. Dr. Lee prescribed Darvocet for the mild neck pain and continued to allow the plaintiff to work full duty. In January of 2002, Dr. Lee's last office visit or examination with the plaintiff prior to the April 20, 2003 incident, the plaintiff had a normal neurological examination.
10. On July 22, 2003, the plaintiff returned to Dr. Lee and reported that he had been working on a trailer and was trying to get his landing gear up by himself when he felt something pull in his neck, and he developed an aggressive pain in the neck along with pain down the arm. The plaintiff further informed Dr. Lee that the pain developed into numbness in the left arm within a week or two of the April 20, 2003, incident. An MRI scan was ordered, the results of which noted a herniated disc at the C3-C4 level, an area that was different from the original surgery in 2001 at the C1-C2 level.
11. After several neurological examinations of the plaintiff, Dr. Lee felt surgery was necessary, so he ordered an additional MRI and a myelogram with post-myelogram CT scan on July 29, 2003. The results of the tests demonstrated a large disc herniation at C3-C4 that was causing compression of the spinal cord with some cervical spondylosis at C4-C5, C5-C6, and C6-C7 with no additional cord compression.
12. On August 19, 2003, Dr. Lee performed a pre-surgical visit and examination where he noted bilateral hand and arm numbness, and determined the surgery was indeed necessary. On August 22, 2003, Dr. Lee performed an anterior cervical diskectomy with removal of the disc between C3-C4 and a fusion of the C3-C4 area with insertion of a titanium plate into the level above and below the disc space.
13. Since the surgery, the plaintiff has continued to recover but has been unable to return to work since May 14, 2003. The plaintiff presented again to Dr. Lee for a post-operative visit on October 8, 2003, where he continued to have neck pain and some arm pain. At the October 8, 2003, visit an x-ray confirmed that the C3-C4 level had fused, although the fusion created some angulation or kyphosis at the C2-C3 level.
14. The plaintiff presented on January 6, 2004, with continuing neck pain and some numbness and tingling throughout his body that Dr. Lee related to the cord compression. The plaintiff continued to have decreased strength in the left arm, although the angulation at the C2-C3 area continued to be a concern. Dr. Lee ordered several follow-up tests, including an additional myelogram which demonstrated that the angulation was fixed in position, although the plaintiff continued to have diminished reflexes and strength on the left side. Dr. Lee then referred the plaintiff to Dr. Davidson of the same office, who specializes in complex spinal surgery.
15. Dr. Lee believed the plaintiff should not have worked from the time of his injury through the present and continuing until the six month follow-up visit from the surgery when additional x-rays would be taken to determine the stability of plaintiff's neck. Any permanent restrictions regarding the plaintiff will be delayed until the nature of his progression and prognosis is known.
16. Dr. Lee opined that plaintiff's disc herniation and subsequent medical treatment were causally related to his injury by accident of April 20, 2003.
17. The plaintiff did not provide written notice of his work-related injury within thirty (30) days of its occurrence because he believed the pain was not serious and would dissipate. The defendants were not prejudiced by the same. The plaintiff has not yet reached maximum medical improvement.
18. Based on the Form 22 submitted by the defendants, plaintiff's average weekly wage was $471.48, yielding a compensation rate of $314.33.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On April 20, 2003, plaintiff sustained an injury by accident to his back or specific traumatic incident of the work assigned, arising out of and while in the course and scope of his employment with the defendant-employer. N.C. Gen Stat. § 97-2(6).
2. Plaintiff's average weekly wage was $471.48, yielding a compensation rate of $314.33. N.C. Gen Stat. § 97-2(5).
3. As a result of his compensable injury by accident, the plaintiff is entitled to payment of temporary total disability compensation, payable at the rate of $314.33 per week beginning May 15, 2003 and continuing until further Order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
4. As a result of his compensable injury by accident, plaintiff has incurred and continues to incur expenses for medical treatment that is necessary to effect a cure, provide relief and/or lessen his period of disability. The plaintiff is entitled to payment of said expenses by the defendants. N.C. Gen. Stat. § 97-25.
5. Even though the plaintiff did not provide written notice of his work-related injury within thirty (30) days of its occurrence, the defendants were not prejudiced by the same. N.C. Gen. Stat. § 97-22.
 *********** AWARD
1. Subject to attorney's fees approved herein, defendants shall pay to plaintiff temporary total disability compensation at the rate of $314.33 per week beginning May 15, 2003 and continuing until further Order of the Industrial Commission. Compensation due which has accrued shall be paid to plaintiff in a lump sum, subject to the attorney's fees hereinafter approved.
2. Defendants shall pay the expenses for plaintiff's medical treatment, incurred and to be incurred, that are related to plaintiff's injury by accident of April 20, 2003, when bills for the same have been submitted according to proper Industrial Commission procedure.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation due plaintiff in Paragraph 1 of this AWARD is hereby APPROVED for plaintiff's counsel and shall be paid as follows: twenty-five percent (25%) of the lump sum compensation due the plaintiff shall be deducted from said compensation and shall be paid directly to plaintiff's counsel in one lump sum; thereafter, plaintiff's counsel shall receive every fourth check due the plaintiff.
4. Defendants shall pay the costs.
This the ___ day of July, 2005.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN